## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

BRIAN KEIM, *individually, and on*
*behalf of other similarly situated individuals*,

       Plaintiff,                             CLASS ACTION

v.                                       JURY TRIAL DEMANDED

SOUTH FLORIDA FAIR AND PALM BEACH
COUNTY EXPOSITIONS, INC., and WADE
SHOWS OF FLORIDA, INC., *as successor by*
*merger to Wade Shows Incorporated*,

       Defendants.
_____/

## CLASS ACTION COMPLAINT FOR RECKLESS AND/OR KNOWING VIOLATIONS OF THE FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiff, Brian Keim (hereinafter "Plaintiff" or "Mr. Keim"), on behalf of himself and others similarly situated individuals, sues Defendants, SOUTH FLORIDA FAIR AND PALM BEACH COUNTY EXPOSITIONS, INC, INC. (hereinafter "SF Fair"), and WADE SHOWS OF FLORIDA, INC., as successor by merger to Wade Shows Incorporated (hereinafter "Wade Shows" and collectively with SF Fair "Defendants"), and alleges the following upon information and belief, and his own personal knowledge.

### I.     NATURE OF THE CASE

1.     This action arises from Defendants' knowing or reckless violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., ("FCRA"), which requires persons that accept debit cards or credit cards at the point-of-sale to truncate certain card number information on printed receipts provided to consumers. Despite the clear language of the statute, Defendants knowingly or recklessly failed to

comply with federal law in <u>two different ways</u>: (1) by printing the first digit of their customers' credit card and/or debit card accounts with regard to tens of thousands of receipts; and (2) by revealing the full credit or debit card expiration date on those same transaction receipts.

2.      Upon discovering the unlawful printing of his personal debit card information after he purchased a ticket to attend the South Florida Fair in West Palm Beach, Florida (the "Fair"), Plaintiff became concerned that his sensitive financial information had been compromised.

3.      Specifically, Plaintiff was worried that his receipt had been viewed by a third party, including but not limited to: (1) one of the many security cameras in use at the SF Fair; (2) by a "shoulder surfer"; or (3) by an unscrupulous employee. Consequently, Plaintiff cancelled his debit card and requested his bank to issue a new card bearing a different account number.

4.      Additionally, Mr. Keim was troubled by the fact that Defendants encouraged their customers, including Plaintiff, to bring their receipts bearing private financial information to a third-party restaurant to redeem a coupon. By doing so, Defendants dramatically increased their customers' risk of identity theft.

5.      The coupon on the back of Defendants' violative receipts could be redeemed by any person presenting it to the third-party restaurant, not only the ticket purchaser. As a consequence, Defendants thereby incentivized dumpster-divers to look for receipts to take advantage of the coupon printed on the back. Consequently, this sort of coupon-receipt containing consumers' sensitive financial information is more likely to be seen by a third-party and thereby increased the likelihood of identity theft.

6.      As a result of Defendants' unlawful conduct, Plaintiff and the Classes who engaged in credit or debit card transactions with Defendants during the time frame relevant to this action have suffered a violation of their substantive rights under § 1681c(g), an invasion of their right to

privacy, breach of their confidence in the safe handling of their account information, exposure to an elevated risk of identity theft, and were unfairly burdened with the need to keep or destroy the receipt in order to prevent further disclosure of their account information and in some case, like Plaintiff, to cancel their cards for security concerns and request the issuance of a new card. Accordingly, Plaintiff and the Classes are entitled to an award of statutory damages and other relief as further detailed herein.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. § 1331, because the claims in this action arise from the violation of a federal statute.

8.      Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant SF Fair is incorporated in Florida and does business in this District, and therefore it is subject to personal jurisdiction. Defendant Wade Shows does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## III.    PARTIES

9.      Plaintiff Brian Keim is a natural person who, at all times relevant to this action, was and is a citizen of the State of Florida and whose domicile is in Palm Beach County, Florida.

10.     Defendant SOUTH FLORIDA FAIR AND PALM BEACH COUNTY EXPOSITIONS, INC. is a Florida non-profit corporation whose principal address is 4425 Military Trail, Suite 109, Jupiter Florida 33458, and whose registered agent for service of process is John F. Foster, 4425 Military Trail, Suite 109, Jupiter Florida 33458.

11.     At all times relevant to this action, SF Fair is and was an owner, operator, producer, licensor, sponsor, agent, subagent, principle, party to a joint venture, and/or merchant of record in

3

relation to the Fair.

12. Defendant WADE SHOWS OF FLORIDA, INC. is a Michigan corporation whose principal address is 2000 Town Center, Suite 1500, Southfield Michigan 48075, and whose registered agent for service of process is Tova Shaban, 2000 Town Center, Suite 1500, Southfield Michigan 48075.

13. At all times relevant to this action, Wade Shows is and was an operator, manager, licensee, agent, subagent, principle, and/or party to a joint venture in relation to the Fair.

### IV. INDIVIDUAL, AGENCY, AND JOINT VENTURE LIABILITY

14. Whenever in this complaint reference is made to any act or omission of a corporate defendant, partnership, or other entity, such allegations shall be deemed to mean that the directors, officers, agents, employees, representatives, distributors, partners, contractors, third-party sales agencies or representatives of said corporate defendant, partnership or other entity, did authorize or command such act or omission while actively engaged in the management, production, operation, licensing, sponsorship, control or representation of the affairs of said corporate defendant, partnership or entity, and while acting within the course and scope of their agency, license, distributorship, contract, employment, representation, and capacity.

15. Wade Shows is the carnival provider for the SF Fair and directly sells tickets to the Fair. *See* <u>Exhibit A</u>, attached hereto. Further, Wade Shows promotes the Fair on its website and Facebook page. *Id.*; *see also North America's Largest Traveling Ferris Wheel Coming to South Florida Fair*, WBP MAGAZINE (Jan. 2, 2018) https://www.wpbmagazine.com/north-america-largest-traveling-ferris-wheel-coming-south-florida-fair/ (describing Wade Shows as the "the fair's midway operator").

16.     In their respective duties and responsibilities, each Defendant is responsible (i) for accepting and does, in fact, accept credit/debit cards for payment; (ii) for causing properly truncated receipts to be provided to cardholders at the point of sale; and (iii) for following federal law and data-security standards, which include FACTA.

17.     At all times material to this action, Plaintiff alleges that each respective Defendant is individually responsible for the occurrences alleged in this complaint, that each is the proximate cause of the harm alleged herein, and each is individually liable for the FACTA violations alleged herein.

18.      To the extent that not every Defendant is individually responsible for the FACTA violations and the proximate cause of the harm alleged herein, Plaintiff alleges that, at all times material to this action, Defendants acted in concert with each other, acted as agents or subagents for one another and intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and they were the proximate cause of the FACTA violations vis-à-vis Plaintiff and members of the Classes.

19.     To the extent that not every Defendant is individually responsible for the FACTA violations and the proximate cause of the harm alleged, Plaintiff alleges that, at all times material to this action, Defendants acted in concert with each other, acted as parties to a joint venture and intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and they were the proximate cause of the FACTA violations vis-à-vis Plaintiff and members of the Classes.

## V.      FACTUAL ALLEGATIONS

### A.      Background of FACTA

20.      Identity theft is a serious issue affecting both consumers and businesses. As of 2018, a Harris Poll revealed that nearly 60 million Americans have been affected by identity theft.[1] There were a record high 16.7 million victims of identity fraud in 2017 alone, and account takeovers (when a thief opens a credit card account or other financial account using a victim's name and other stolen information) tripled in 2017 from 2016, causing $5.1 billion in losses.[2]

21.      Congress enacted FACTA to prevent identity theft and related harm. *See* Pub. L. No. 108-159 (December 4, 2003) ("An Act . . . to prevent identity theft . . . and for other purposes.")

22.      Upon signing FACTA into law, President George W. Bush remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

23.      One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a person's credit or bank account from a receipt provided to the person at the point of sale, which, through any number of ways, could fall into the hands of someone other than the cardholder.

24.      Codified at 15 U.S.C. § 1681c(g), this provision states the following:

> ***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

---

[1]      Source: https://www.lifelock.com/learn-identity-theft-resources-how-common-is-identity-theft.html (Last viewed: March 24, 2020).
[2]      Source: https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (Last viewed: March 24, 2020).

15 U.S.C. § 1681c(g) (the "Receipt Provision").

25.      In regulating printed receipts, Congress recognized the risk posed by the vast proliferation of small slips of paper bearing consumers' financial information, which could easily be lost, and which the unscrupulous could easily retrieve after disposal. S. Rep. No. 108-166, at 13 (2003) (provision "included . . . to limit the number of opportunities for identity thieves to 'pick off' key card account information").

26.      Congress recognized the unlawful disclosure of private information as a concrete injury because it enhances the risk of identity theft, as testimony to Congress confirmed the dangers of putting card account information within the reach of "unscrupulous employees", "dumpster-divers", and "shoulder-surfers."  *See* S. Hrg. 109-1087, Testimony of Mari J. Frank (May 10, 2005),       p.75,       https://www.gpo.gov/fdsys/pkg/CHRG-109shrg61787/pdf/CHRG-109shrg61787.pdf ("There are many ways that fraudsters obtain data about us--it may be appropriated by, stolen mail, **dumpster-diving**, lost or stolen wallets, **shoulder surfing**, burglary, friends, relatives (only about 9 percent), **unscrupulous employees** …") (emphasis added).

27.      After enactment, FACTA provided three (3) years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

28.      The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained that, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . The first phase of this

new policy goes into effect July 1, 2003 for all new terminals."[3] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

29.    Card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[4]

30.    Because a handful of large retailers did not comply with their contractual obligations to the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 to make temporary changes to the definition of willful noncompliance with respect to violations involving the printing of an expiration date on credit and debit card transaction receipts shortly after FACTA's enactment.[5] Importantly, the Clarification Act reaffirmed Congress's belief that "proper truncation" of the account number on the receipt (*i.e.* masking all but the last five digits) protects cardholders from identity theft or credit card fraud.

31.    Accordingly, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any

---

[3] *Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft*, PR NEWSWIRE (Mar 06, 2003) https://www.finextra.com/newsarticle/8206/visa-to-hide-card-numbers-in-bid-to-cut-identity- (Last viewed: March 24, 2020).
[4] *Rules for Visa Merchants*, VISA (Sept. 1, 2007), http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last viewed: March 13, 2020).
[5] *H.R. 4008 (110th): Credit and Debit Card Receipt Clarification Act of 2007*, GOV TRACK, https://www.govtrack.us/congress/bills/110/hr4008/text (Last viewed: March 24, 2020).

cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.

*See* Exhibit B, Visa Best Practices Alert.

32.     As noted above, the processing companies have required truncation of all but the last five digits of credit card or debit card numbers and expiration dates on point-of-sale transaction receipts since 2003 and still require it. For example, American Express requires:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* Exhibit C, American Express Merchant Requirements.

33.     Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

*See* Exhibit D, Mastercard Acceptance Procedures.

34.     According to data from the Federal Trade Commission's 2018 Consumer Sentinel Network Data Book, Florida ranks No. 1 for the highest per capita rate of reported fraud and other

types of complaints.[6]  For identity theft, Florida is ranked No. 4 in the country with a total of 37,797 complaints.[7]  Also, some of the top metro areas for identity theft are in Florida, according to the report.  The fifth highest rate of identity theft in the United States takes place in the Miami-Fort Lauderdale-West Palm Beach metropolitan area with 280 reports per 100,000 people.[8]

35.    So problematic is the crime of identity theft that the main credit reporting agencies, Experian, Equifax, and Transunion, set-up a free website (http://www.annualcreditreport.com) to comply with FACTA requirements and to provide the U.S. citizens a means of monitoring their credit reports for possible identity theft.

36.    Defendants should have been informed and particularly concerned with their customers' privacy because fairs and amusement parks are a significant target of credit and debit card fraud.[9]

37.    FACTA clearly prohibits the printing of more than the last five (5) digits of the card number to protect persons from an increased risk of identity theft.

---

[6]  Source:  https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf  (last viewed: March 24, 2020); *see also*  https://www.idtheftcenter.org/florida-named-top-state-for-identity-theft-and-fraud/ (last viewed: March 18, 2020).

[7]  Source:  https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2018/consumer_sentinel_network_data_book_2018_0.pdf  (Last viewed: March 24, 2020).

[8]  *Id.*

[9]  *Orlando Man Sentenced To Three Years In Federal Prison For Identity Theft And Credit Card Fraud At Universal Orlando Theme Parks*, U.S. DEP. OF JUSTICE U.S. ATTORNEY'S OFFICE MIDDLE DISTRICT OF FLORIDA,   https://www.justice.gov/usao-mdfl/pr/orlando-man-sentenced-three-years-federal-prison-identity-theft-and-credit-card-fraud  (last visited March 24, 2020); *Georgia Man Sentenced To Four Years For Credit Card Fraud And Identity Theft At Resort And Theme Parks*, U.S. DEP. OF JUSTICE U.S. ATTORNEY'S OFFICE MIDDLE DISTRICT OF FLORIDA, https://www.justice.gov/usao-mdfl/pr/georgia-man-sentenced-four-years-credit-card-fraud-and-identity-theft-resort-and-theme (last visited March 24, 2020).

### B.      Defendants' Prior Knowledge of FACTA

38.      Most of Defendants' business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendants could have readily done the same.

39.      In addition to being informed not to print more than the last five (5) digits of credit or debit cards and the expiration date of credit and debit cards on receipts, Defendants were contractually prohibited from doing so. Defendants accept credit cards and debit cards from all major issuers. As discussed, *supra*, these companies set forth requirements that merchants, including Defendants, must follow, including FACTA's redaction and truncation requirements.

40.      Plaintiff is informed and believes, and thereupon alleges, that Defendants knew about the requirement that to truncate credit and debit numbers and card expiration date on transaction receipts. Any employee of Defendants could have noticed that the credit and debit card receipts printed by Defendants look different from all others in the amusement industry or any other industry – *i.e.*, Defendants receipts display the credit and debit card's full expiration date as well as the initial digit of the consumer's card account.

41.      Plaintiff is informed and believes, and thereupon alleges, that it would take an individual only a few seconds to run a test to determine whether Defendants' point-of-sale system was in fact in compliance with federal law(s) requiring the truncation of credit card and debit card numbers and expiration date on printed receipts. Defendants could have performed a compliance check in less than a few seconds to catch the errors at issue but instead chose to recklessly print tens of thousands of violative receipts while simultaneously encouraging people to turn them over

to third parties. The back of Defendants' violative receipts, in fact, contains a coupon to be redeemed at a Popeyes© fast-food restaurant:



42.     The combination of the above-illustrated coupon with Defendants' FACTA violative receipts remarkably increased the consumers' risk of identity theft because Defendants incentivized them to bring the receipt unlawfully bearing their credit or debit card information to a third party to retrieve their coupon. By doing so, in fact, the consumers' private financial information—that Defendants failed to properly truncate—was disclosed to additional third-parties and potentially thousands of violative receipts were ultimately turned over to the third-party restaurant and its employees.

**C.     Plaintiff's Factual Allegations**

43.     On or about January 28, 2020, Plaintiff purchased a ticket at the Fair located in West Palm Beach, Florida, for which he incurred a charge and paid for using his personal debit card.

44.     Upon making the aforementioned payment, Plaintiff was provided an electronically printed receipt at the point of sale, which displayed the first digit of his debit card account number, the last four digits of his debit card account number, and the full expiration date of his debit card.

45.     Importantly, (1) Defendants sold the ticket purchased by Plaintiff; (2) Defendants

employed the personnel who sold the ticket to Plaintiff and processed Plaintiff's transaction; (3) Defendants were contractually responsible for a portion of all expenses relating to the sale of Plaintiff's ticket.

46.     SF Fair and Wade individually and/or collectively bear responsibility for Plaintiff's transaction, which included the acceptance of his debit card payment, the processing of his debit card payment, and the printing of the violative receipt provided to him at the point of sale.

47.     In fact, Plaintiff bought his ticket from SF Fair to attend the Fair while Wade Shows engages in promoting the Fair, selling tickets to the Fair, and implementing a ticketing system for the Fair.

48.     Wade Shows this year implemented a new electronic ticketing system for its fairs and events, which upon information and belief include the South Florida Fair. The new system permits consumers to use their phones as tickets. However, Wade Shows offers user-friendly kiosks with interactive touch screens that dispense cards, scan pre-sale codes, accept cash or credit and give change.[10]

49.     Plaintiff was not alone in this experience. Upon information and belief, like Plaintiff, numerous other consumers attend the Fair and, while paying for tickets, were provided electronically printed receipts, which displayed the first digit of their debit or credit card account numbers, the last four digits of their debit or credit card account numbers, and the full expiration date of their debit or credit cards.

50.     "Every January since 1912, over a half million visitors head out to the South Florida Fairgrounds in West Palm Beach to enjoy the weeklong festivities at the South Florida Fair." *Free*

---

[10] Ron Weber, *Wade Shows to Premier New FunTagg System in 2020*, (Monday, November 11, 2019)   https://carnivalwarehouse.com/newsserver/wade-shows-to-premier-new-funtagg-system-in-2020-1573430400.

*Tickets to the South Florida Fair When You Donate to the Palm Beach County Food Bank*, Rebecca McBane, BROWARD PALM BEACH NEW TIMES, (Jan. 7, 2016) https://www.browardpalmbeach.com/restaurants/free-tickets-to-the-south-florida-fair-when-you-donate-to-the-palm-beach-county-food-bank-7500587; *see also North America's Largest Traveling Ferris Wheel Coming to South Florida Fair*, WBP MAGAZINE (Jan. 2, 2018), https://www.wpbmagazine.com/north-america-largest-traveling-ferris-wheel-coming-south-florida-fair/ (describing SF Fair as the "biggest fair in South Florida").

51.     The electronically printed receipts provided to Plaintiff and members of the Classes by Defendants at the point of sale, constitute two separate violations of FACTA, as they display (i) more than the last five (5) digits of their credit/debit card account numbers and (ii) the expiration date of their credit/debit cards.

52.     The electronically printed receipts provided to Plaintiff and members of the Classes by Defendants at the point of sale, also contain a coupon on their reverse side for the fast-food restaurant Popeyes©, encouraging others to search for discarded or dropped receipts; thereby, increasing exposure to an elevated risk of access to private financial data and identity theft. *See*, *supra*, ¶40.

53.     When Plaintiff discovered Defendants unlawfully printed his personal debit card information, Plaintiff became concerned enough that his debit card numbers and expiration date had been viewed on one of the many security cameras in use at the SF Fair, by a "shoulder surfer", or by an unscrupulous employee of Defendants that he later cancelled his debit card and requested his bank to issue a new card.

54.     Because of Defendant's FACTA violation that exposed Plaintiff to a higher risk of identity theft, Plaintiff lost the use of his debit card for the time the bank issued a new replacement

card. This process caused Plaintiff to waste his time taking adequate precautions against identity theft, including contacting his bank to cancel the debit card which extra digit and expiration date had been exposed by Defendants, and requesting a new one.

55.     Moreover, each consumer who purchased a ticket and visited a Popeyes© restaurant to retrieve the coupons printed on the back of the violative receipt innocently exposed his or her credit/debit card information to additional third parties such as the restaurant employees. The receipts of all consumers who retrieved their coupons at a Popeyes© restaurant are, thus, in possession of a third-party. By doing so, Defendants has dramatically increased the putative class members' exposure to identity theft.

56.     At all times relevant herein, Defendants were acting by and through their agents, servants, and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants.

57.      At all times relevant herein, the conduct of Defendants, as well as that of their agents, servants, and/or employees, was in willful, knowing, and reckless disregard for federal law and the rights of the Plaintiff and other members of the Classes.

58.     Defendant SF Fair's website displays a "Ticket Disclaimer" which states:

> By accepting admission with this ticket, you agree to assume all risk and to release the South Florida Fair & Palm Beach County Expositions, Inc. from all responsibility for any loss, injury or damage which you may suffer, ***excepting any loss, injury or damage caused by our reckless, willful or grossly negligent acts***.

*Ticket Disclaimer*, attached hereto as <u>Exhibit E</u> (emphasis added).  Therefore, Defendants should be held accountable for their *willful* violations of FACTA.

59.     It is Defendants' policy and procedure to issue an electronically printed receipt to

individuals at the point of sale – *i.e.*, immediately upon receipt of credit or debit card payment.[11]

60.     Consistent with Defendants' policy and procedure, Defendants willfully, knowingly, and/or recklessly include more than the last five (5) digits of credit/debit card account numbers and credit/debit card expiration dates on the electronically printed receipts they provide to cardholders at the point of sale.

61.     The extra digit and expiration date appearing on the receipts are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

62.     Notwithstanding the fact that they had years to comply, Defendants continue to issue point of sale receipts, which contain more than the last five (5) digits and of credit/debit card account numbers and the credit/debit card's expiration date, in direct violation of FACTA.

63.     Notwithstanding Defendants' knowledge of FACTA, Defendants continue to recklessly or willfully violate FACTA by issuing receipts, which contain more than the last five (5) digits and of credit/debit card account numbers and the credit/debit card's expiration date.

64.     Accordingly, Defendants have acted and continue to act in conscious disregard for the rights of others and have engaged in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known.

**D.      Defendants' Misdeeds**

65.     Defendants exercise control of each and every one of their facilities, including but not limited to the type of point-of-sale terminals in use at said facilities.

---

[11]  Source: https://d38trduahtodj3.cloudfront.net/files.ashx?t=fg&rid=SouthFloridaFair&f=2020-SFF-Rules-Regs(1).pdf (last visited March 24, 2020).

66.     At all times relevant herein, Defendants were acting by and through their subsidiaries, agents, servants and/or employees, including without limitation those at the SF Fair and the employees thereof, each of whom were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendants.

67.     At all times relevant herein, Defendants' violation of FACTA, as well as that of their subsidiaries, agents, servants and/or employees, including without limitation Defendants' SF Fair and the employees thereof, was knowing or reckless.

68.     Defendants utilize the same receipt printing equipment and receipt format at all locations in the United States.

69.     Plaintiff is informed and believes that Defendants implement, oversee, and maintain control over the same debit and credit card payment processing policies, practices, and procedures for customer debit and credit card transactions at all of their locations nationwide by, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendants use to process all such transactions at their locations nationwide.[12]

70.     Plaintiff is informed and believes that Defendants and/or their point of sale system maintains records of all payment transactions and customers' information, including duplicate hard copies and electronic copies of all payment receipts provided to customers, and can easily provide records of all electronically printed receipts provided to their patrons during the time frame relevant to this action.[13]

---

[12] Ron Weber, *Wade Shows to Premier New FunTagg System in 2020*, (Monday, November 11, 2019)   https://carnivalwarehouse.com/newsserver/wade-shows-to-premier-new-funtagg-system-in-2020-1573430400.
[13] *Id.*

71.     Notwithstanding their knowledge of the requirements of FACTA and the dangers imposed upon consumers through their failure to comply, Defendants have issued, during the time frame relevant to this Complaint, thousands of point-of-sale receipts containing the first one and the last four (4) digits of credit and debit card account numbers and the full expiration date of credit and debit card.

72.     By shirking their FACTA obligations on such a large scale, Defendants systematically violated Plaintiff's and the other putative Class members' privacy, breached their confidence, mishandled their personal account information, and exposed them to a heightened risk of identity theft. Defendants' conduct alleged herein resulted in the disclosure of Plaintiff's and the Class members' private financial information to persons who might find the receipts in the trash or elsewhere, as well as the Defendants' retail employees who handled the receipts, and the third-party restaurant where consumers brought their violative receipts to retrieve the coupon.

73.     Simply put, by printing numerous transaction receipts in violation of this long-standing and well-known federal statute, Defendants have caused – to paraphrase the words of the Honorable Judge Posner (retired) – "an unjustifiably high risk of harm that [wa]s either known or so obvious that it should [have been] known" to Defendants. *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

74.     In view of the substantial harm and other risks to Plaintiff and the Classes caused by Defendants' knowing or reckless conduct, and the likelihood that such harms and risks will continue absent judicial relief, the Court should enjoin Defendants from continuing to print receipts at their point of sale terminals in violation of FACTA. *See Safeco Ins. Co. of Am. v. Burr*,

551 U.S. 47, 69 (2007) (pronouncing that a defendant is liable for willfully violating Fair Credit

Reporting Act where a violation is committed with "reckless disregard" for the law).

### V.      CLASS ALLEGATIONS

75.      This action is brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes

the following classes, subject to modification by the Court as required:

**The South Florida Fair Class:**

***(i) All persons in the United States (ii) who, when making a payment for services at the South Florida Fair of West Palm Beach, Florida (iii) made such payment using a credit or debit card (iv) and were provided a receipt at the point of sale (v) which displayed more than the last five (5) digits and/or the expiration date of said credit or debit card (vi) within the two (2) years prior to the filing of the instant action.***

**The Wade Shows Class:**

***(i) All persons in the United States (ii) who, when making a payment for services at a facility produced, operated, licensed, and/or maintained by Wade Shows within the United States (iii) made such payment using a credit or debit card (iv) and were provided a receipt at the point of sale (v) which displayed more than the last five (5) digits and/or the expiration date of said credit or debit card (vi) within the two (2) years prior to the filing of the instant action.***

76.      Plaintiff falls within the class definition and is a member of each class. Excluded

from the classes are Defendants and any entities in which Defendants have a controlling interest,

Defendants' attorneys, agents, and employees, Plaintiff's attorneys and their employees, the Judge

to whom this action is assigned, and any member of the Judge's staff and immediate family, and

any claims for personal injury, wrongful death, and/or emotional distress.

### A.      Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.

77.      The classes are ascertainable. They are defined based on objective criteria. Also,

their members generally can be identified based in whole or in part on information within

Defendants' possession, custody, or control, as well as from records of the entities that processed

19

the card transactions at issue, and records of the banks that issued the credit/debit cards. *See, e.g.,*
*Legg v. Spirit Airlines, Inc*., No. 0:14-cv-61978, ECF No. 146 at p. 14 (S.D. Fla. July 11, 2016)
(describing process of issuing subpoenas to credit card processors and banks to locate class
members); *Muransky v. Godiva Chocolatier, Inc*., No. 0:15-cv-60716, ECF No. 74 at p. 12 (S.D.
Fla. Sept. 12, 2016) (same); *Guarisma v. Microsoft Corp*., No. 15-cv-24326-CMA, ECF No. 58
¶¶ 4-6 (S.D. Fla. Apr. 26, 2017) (same); *Flaum v. Doctor's Associates, Inc*., 16-cv-61198-CMA,
ECF No. 87 ¶¶ 4-6 (S.D. Fla. June 2, 2017) (same).

78.     Defendants, throughout each of their locations, print numerous credit and debit card
receipts each day. The class period is two years. In 2019, 359,020 people attended the South
Florida Fair.[14] At least 50% of these 359,020 people paid with a debit or credit card.[15]  Therefore,
the classes are sufficiently numerous such that individual joinder of all members is impractical.
The disposition of the claims in a class action will provide substantial benefit to the parties and the
Court by avoiding a multiplicity of identical suits.

79.     Although FACTA does not distinguish between business and consumer
transactions, all or most purchases at Defendants' retail location for which a FACTA-violative
receipt is provided are paid with a consumer card, rather than a business card, because Defendants
operate fairs and amusement parks. To the extent this is an issue, the payments made with the two
types of cards are easily discernible: merchants are charged interchange fees for card transactions

---

[14]     SOUTH          FLORIDA          FAIR,          *Demographics*,
https://www.southfloridafair.com/p/thefair/getinvolved/elevate-and-showcase-your-brand-with-
us!-%7C-561.790.5233/demographics (last visited March 24, 2020).
[15] The 2019 Diary of Consumer Payment Choice (Diary) from the fifth Diary study conducted by
the Federal Reserve shows that on average consumers use debit cards for 28% of their transactions,
and credit cards for 23% of transactions. 2019 *Findings from the Diary of Consumer Payment*
*Choice*,       FEDERAL       RESERVE       BANK       OF       SAN       FRANCISCO,
https://www.frbsf.org/cash/publications/fed-notes/2019/june/2019-findings-from-the-diary-of-
consumer-payment-choice/ (last visited March 24, 2020).

that vary based on whether the card is a business card or a consumer card. There are different interchange categories and codes assigned to each transaction that distinguish whether a card used for a transaction is a business card or a consumer card. Defendants and their merchant bank(s) could easily identify whether a particular transaction involved a business card or a consumer card. *See Altman v. White House Black Mkt., Inc.*, No. 1:15-CV-2451-SCJ-JKL, 2017 WL 8780202, at *4 (N.D. Ga. Oct. 25, 2017), *report and recommendation adopted as modified*, No. 1:15-CV-2451-SCJ, 2018 WL 1704110 (N.D. Ga. Feb. 12, 2018) (the plaintiff offered the expert's, Don Coker, report which describes in detail how to distinguish consumer card from business cards. "Coker explains in his report that business and commercial cards have different Bank Identification Numbers ("BIN") from consumer or personal cards, and those numbers can be cross-referenced with publicly available information to determine whether a particular card is a consumer or business card.")

80.    There are common questions of law and fact that predominate over any questions affecting only the individual members of the classes. The wrongs alleged against Defendants are statutory in nature and common to each and every member of the putative classes.

81.    While all Class Members have experienced actual harm as previously explained herein, this suit seeks only statutory damages and injunctive relief on behalf of the classes. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

82.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Classes include the following:

a.      Whether, within the two (2) years prior to the filing of this Complaint, Defendants and/or their agents employed a point-of-sale payment system programmed to generate credit or debit card transaction receipts containing more than the last five (5) digits of card number numbers and/or the expiration date of credit and debit cards;

b.      Whether Defendants' actions violate FACTA;

c.      Whether Defendants' violation was knowing or reckless;

d.      The extent of statutory damages for Defendants' violation; and

e.      Whether Defendants should be enjoined from engaging in such conduct in the future.

83.      As a person who patronized one of Defendants' locations and was provided a printed receipt containing more than the last five (5) digits and the expiration date of his debit card, Plaintiff is asserting claims that are typical of the proposed classes. Plaintiff will fairly and adequately represent and protect the interests of the classes in that Plaintiff has no interests antagonistic to any member of the classes, and has engaged competent class counsel.

84.      The principal question is whether Defendants violated section 1681c(g) of the FCRA by providing Class Members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether Defendants' violation was knowing or reckless.

85.      Absent a class action, the classes, along with countless future customers of Defendants' locations, will continue to face the potential for irreparable harm. In addition, these violations of the law would be allowed to proceed without remedy. Because of the size of the individual Class Members' claims, few Class Members could afford to seek legal redress for the wrongs complained of herein.

86.     Defendants' defenses are and will be typical of and the same or identical for each of the members of the classes and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

87.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendants is zero. The maximum statutory damages in an individual action for a violation of this statute are small, and the cost and effort needed to prosecute a claim to recover those small damages makes individual litigation infeasible. Conversely, the claims at issue are well-suited for class treatment given the commonality of claims and relative ease of management. For these reasons, FACTA cases are commonly certified for class treatment.

88.     Defendants have acted on grounds generally applicable to the classes, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the classes as a whole.

### COUNT I – VIOLATION OF  15 U.S.C. § 1681(c)(g)

89.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

90.     15 U.S.C. §1681c(g) states as follows:

***Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.***

91.     This section applies to any "device that electronically prints receipts" ("Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

92.     Defendants employ the use of said Devices for point of sale transactions at each of their locations, including the West Palm Beach location.

93.     On or before the date on which this complaint was filed, Plaintiff and members of the classes were provided receipt(s) by Defendants that failed to comply with the Receipt Provision.

94.     At all times relevant to this action, Defendants were aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

95.     Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, and the years since FACTA became effective; and having direct knowledge of the Receipt Provision and FACTA as a whole; Defendants knowingly or recklessly violated and continue to violate the Receipt Provision.

96.     By printing more than the last five (5) digits and the expiration date of Plaintiff's debit card on Plaintiff's transaction receipt, Defendants caused Plaintiff and their other customers numerous injuries as described above.

97.     As a result of Defendant's willful violations of the FCRA, Defendants are liable to Plaintiff and members of the classes pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

*     *     *

**WHEREFORE**, Plaintiff Brian Keim respectfully requests that this Court enter judgment in his favor and the classes, and against Defendants, as follows:

a.     Granting certification of the Classes;

b.     Awarding statutory damages;

c.     Awarding punitive damages;

d.     Awarding injunctive relief;

e.     Awarding attorneys' fees, litigation expenses and costs of suit, and;

f.      Awarding such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 25, 2020

**BRIAN KEIM**, *individually, and on behalf of other similarly situated individuals*

*s/ Scott D. Owens, Esq.*
Scott D. Owens, Esq.
Scott D. Owens, Esq. (FBN 0597651)
**SCOTT D. OWENS, P.A.**
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

25